[Civ. No. 22624. Second Dist., Div. Two. Apr. 17, 1958.]

EMMA CAMPBELL, Appellant, v. ETHEL M. CLARK et al., Respondents.

Marvin Gross for Appellant.

Waters, Arditto & Waters for Respondents.

HERNDON, J.—Plaintiff appeals from a judgment rendered against her after defendants' objection to the introduction of any evidence had been sustained and after plaintiff's motion for leave to amend her complaint had been denied. The stated ground of the objection and the basis for the ruling was that the complaint failed to state a cause of action.

Similar rulings were made in another action which was consolidated with the instant action for purposes of trial. The appeal from the ensuing judgment in the companion case is the subject of our opinion this day filed in *Campbell* v. *Clark (No. 22625), post,* p. 439 [324 P.2d 55].

It is well settled, of course, that an objection to the introduction of any evidence on the ground that a complaint fails to state a cause of action is in the nature of a general demurrer to the complaint or a motion for judgment on the pleadings. Upon such an objection the allegations of the complaint must be accepted as true for the purposes of the objection. (*Miller* v. *McLaglen,* 82 Cal.App.2d 219, 223 [186 P.2d 48] ; *Bice* v. *Stevens,* 136 Cal.App.2d 368, 373 [289 P.2d 95] ; *Domino* v. *Mobley,* 144 Cal.App.2d 24, 26 [300 P.2d 324] ; *Byson* v. *City of Los Angeles,* 149 Cal.App.2d 469, 472 [308 P.2d 765].) It is also a well established rule that after such an objection is sustained, leave to amend must be granted "unless it appears to a certainty that no basic right of action can possibly exist or no relief can possibly be granted." (*Miller* v. *McLaglen, supra,* at p. 228, and *Bice* v. *Stevens, supra,* at p. 379.)

We must accordingly examine and test plaintiff's complaint in the light of these applicable rules of law.

The complaint, which is most inartificial and which her present counsel concedes to be "deficient in several respects," was filed on July 13, 1955. It is most deceptively and inaccurately entitled "COMPLAINT FOR DAMAGES; Refusal to Transfer Stock on Books of Corporation." It names as defendants California Test Bureau, a corporation, and a number of individuals alleged to be then present or former officers and directors of said corporate defendant.

After various allegations with respect to the official capacities of the individual defendants, plaintiff alleges in paragraph VII that on November 27, 1940, the corporate defendant's predecessor issued its stock certificates for 10 shares of its capital stock to one Emery W. Harvey and that by virtue of his ownership of said certificate Harvey became the owner and entitled to receive 10 shares of the capital stock of the defendant corporation.

In paragraph VIII it is alleged that between May 7, 1931, and April 10, 1951, the corporate defendant issued a total of 20 shares of its capital stock to one Hazel W. Whedon. In paragraph IX it is alleged that on June 22, 1953, plaintiff purchased Harvey's 10 shares and took an assignment thereof.

In paragraph X it is alleged that on June 19, 1953, plaintiff purchased Whedon's 20 shares and that both Harvey and Whedon by separate instruments assigned their respective interests in said shares to plaintiff. Paragraph XIII alleges that by the assignments "plaintiff acquired all of the right, title and interest held by her assignors in and to said shares of stock." The gist of plaintiff's first purported cause of action is set forth in paragraphs XIV, XV, and XVI as follows:

### "XIV

"That since the date of acquisition of the shares of this plaintiff's assignors, as aforesaid, defendant California Test Bureau at all times during which said assignor's held stock in said corporation, did operate at a profit and has made financial gains and profits of a substantial nature which said profits and gains have been unlawfully concealed and withheld from this plaintiff who has a legal right thereto by virtue of the assignment of said stock, with the rights pertinent thereto, and said sums have been wrongfully paid to the officers and directors of said corporation as aforesaid; that the exact amount of said sums thus wrongfully withheld and illegally paid to the aforenamed officers and directors of this corporation is unknown to this plaintiff, but this plaintiff is informed and believes and upon such information and belief alleges that such sums are in excess of $750,000.00 of which her rightful share is in excess of $60,000.00 and interest thereon.

### "XV

"That this plaintiff, for the first time, discovered the false and fraudulent representations of these defendants relative to the gains, profits and wrongful withholdings of moneys of said corporate defendant by these named defendants in a hearing before the office of the Corporations Commissioner of this state during the period of June through December 1953 and again in January, 1954 through May, 1954.

### "XVI

"That the statements of the defendants, and each of them, with regard to the extent of profits and liabilities of the corporate defendant and their untrue representations of the same during the period as aforesaid, were untrue and were made to plaintiff's assignors with the intent to deceive, mislead, intimidate and induce plaintiff's assignors to accept

dividends and profits less than those actually earned by the corporation; that as the proximate result of the acts and representations of the defendants, as aforesaid, plaintiff herein as assignee of the rights of the assignors, as aforesaid, has been deprived of her present, past and future rightful share in the profits and earnings of defendant corporation in a sum in excess of $60,000.00 plus interest thereon.''

The second cause of action repleads the first and alleges that the officers and directors conspired together to wrong plaintiff's assignors; that they voted themselves excessive salaries, bonuses, royalties, dividends and commissions and (on information and belief) that defendants have used large amounts of funds of the corporation for their own benefit and use and have collected commissions for goods and services which they did not sell.

In the third cause of action plaintiff repleads the allegations of the first two causes of action and alleges that all of the alleged wrongful acts of the defendants were done maliciously and with the intention to ''injure plaintiff in and to her name, reputation and property rights, . . . and by reason thereof demanded exemplary and punitive damages.''

In the prayer to her complaint plaintiff requests relief ''as assignee of the rights of Hazel Whedon and Emery W. Harvey'' praying: ''(1) That all sums, profits and earnings belonging to said corporation and the stockholders thereof which have wrongfully been appropriated or concealed by these defendants be returned to said corporation; (2) That defendant officers and directors be restrained by injunction from paying excessive sums as salaries, bonuses, royalties and commissions to themselves; (3) That an account be taken of the acts of defendant officers and directors and that they be charged with all moneys they have wrongfully appropriated; (4) That plaintiff be awarded the sum of $60,000.00 as her pro rata share of moneys wrongfully withheld from her as a shareholder in said corporation and interest thereon; (5) Punitive damages, $25,000.00; (6) Costs of suit; (7) Such other and further relief as to the court seems just and proper.''

■ It is manifest from the foregoing analysis of the complaint that the gravamen thereof is the charge that the defendant officers and directors wrongfully appropriated and paid to themselves the earnings and profits of the corporation. The alleged misrepresentations and concealments related solely to the extent of such earnings and profits. Their alleged purpose was to hide wrongs being done to the corporation and its

shareholders. Whatever wrongs were done necessarily affected all shareholders.

Thus the causes of action which plaintiff has attempted to plead are derivative in nature in that the gravamen of the complaint is injury to the corporation and to the whole body of its stockholders. (*Gagnon Co., Inc.* v. *Nevada Desert Inn, Inc.,* 45 Cal.2d 448, 453 [289 P.2d 466] ; *Sutter* v. *General Petroleum Corp.,* 28 Cal.2d 525, 530 [170 P.2d 898, 167 A.L.R. 271] ; *Shenberg* v. *DeGarmo,* 61 Cal.App.2d 326, 330 [143 P.2d 74] ; 12 Cal.Jur.2d 768, § 213.)

The action being derivative in nature, plaintiff could not maintain it in any capacity other than in a *representative* capacity for and on behalf of the corporation. (*Melancon* v. *Superior Court,* 42 Cal.2d 698, 708 [268 P.2d 1050] ; *Beyerbach* v. *Juno Oil Co.,* 42 Cal.2d 11, 20 [265 P.2d 1].) ■ For the same reason, plaintiff could not maintain the action without fulfilling the requirements of subdivision (a) of section 834 of the Corporations Code.* (*Hogan* v. *Ingold,* 38 Cal.2d 802, 809 [243 P.2d 1, 32 A.L.R.2d 834] ; *Difani* v. *Riverside County Oil Co.,* 201 Cal. 210, 215 [256 P. 210].)

Here plaintiff neither claims nor seeks to represent the corporation. Indeed she expressly disavows any intent, purpose or desire to act in a representative capacity and makes no contention that she could amend her complaint to allege compliance with section 834. ■ According to her opening brief "the sole and single issue involved herein is whether this action is derivative in nature, or whether appellant as a shareholder is authorized to sue *on her own behalf* for wrongful appropriations of corporate assets by the corporate officers

---

*"(a) No action may be instituted or maintained in the right of any domestic or foreign corporation by the holder or holders of shares, or of voting trust certificates representing shares, of such corporation unless both of the following conditions exist:

"(1) The plaintiff alleges in the complaint that he was a registered shareholder or the holder of voting trust certificates at the time of the transaction or any part thereof of which he complains or that his shares or voting trust certificates thereafter devolved upon him by operation of law from a holder who was a holder at the time of the transaction or any part thereof complained of.

"(2) The plaintiff alleges in the complaint with particularity his efforts to secure from the board of directors such action as he desires and alleges further that he has either informed the corporation or such board of directors in writing of the ultimate facts of each cause of action against each defendant director or delivered to the corporation or such board of directors a true copy of the complaint which he proposes to file, and the reasons for his failure to obtain such action or the reasons for not making such effort."

and directors. Plaintiff submits that the amendment to Corporations Code, section 825, allows an independent action by the shareholder in the instant case.'' (Emphasis added.) Plaintiff's position is wholly untenable. Her argument betrays a complete misconception of the meaning and effect of section 825, which must be read with section 824. These sections read as follows:

''§ 824. *Unlawful purchase of shares, declaration or payment of dividends, or withdrawal or distribution of assets.* Except as provided in this division, the directors of a corporation shall not authorize or ratify the purchase by it of its shares, or declare or pay dividends, or authorize or ratify the withdrawal or distribution of any part of its assets among its shareholders.''

''§ 825. *Same: Liability of Directors.* In case of any wilful or negligent violation of Section 824, the directors in office at the time of the violation, except those who have caused their dissent from the unlawful action to be entered on the minutes of the meeting at which the action was authorized, and those who were not present at the time the board acted, are jointly and severally liable to the corporation or to its receiver, liquidator or trustee in bankruptcy, for the benefit of the creditors of the corporation or any of them and of the shareholders and owners of shares at the time of the violation, for its debts and liabilities existing at the time of the violation and for the full amount of any loss sustained by such holders and owners of shares, other than shares upon which any such payment or distribution was made, to the amount of the unlawful dividends, purchase price, withdrawals or other distribution.''

It seems obvious that any action brought by a stockholder to enforce a liability under these statutory provisions would have to be brought and maintained in a representative capacity. Such a cause of action is purely derivative in character. It was so held in *Anderson v. Derrick*, 220 Cal. 770 [32 P.2d 1078], construing section 309 of the Civil Code, the statutory antecedent of sections 824 and 825 of the Corporations Code. It follows that if plaintiff could possibly have stated any cause of action under these sections, it would have been *derivative* and no less subject to the provisions of section 834 than any other action instituted ''in the right of a corporation.'' (See *Reed v. Norman*, 41 Cal.2d 17 [256 P.2d 930], and decisions cited at p. 22.)

The judgment is affirmed.

Fox, P. J., and Ashburn, J., concurred.