[Civ. No. 22625.   Second Dist., Div. Two.   Apr. 17, 1958.]

EMMA CAMPBELL, Appellant, v. ETHEL M. CLARK et al., Respondents.

Marvin Gross for Appellant.

Waters, Arditto & Waters for Respondents.

HERNDON, J.—This appeal is companion to *Campbell* v. *Clark (No. 22624), ante*, p. 432 [324 P.2d 51]. The judgment here under review likewise followed rulings which sustained defendants' objection to the introduction of any evidence and denied plaintiff's request for leave to amend her complaint. The record discloses that defendants filed a general demurrer to the complaint, but it was stricken by the judge presiding in the law and motion department on the ground that its filing was "not timely."

It is unnecessary to repeat here the general rules of law governing our review of this judgment and the rulings upon which it is based. Those rules and the supporting authorities are adequately set forth in our opinion in *Campbell* v. *Clark, ante*, p. 432 [324 P.2d 51]. Suffice it to say that defendants' objection to the introduction of any evidence was designed to subject plaintiff's complaint to the same test that the judge presiding in the law and motion department would have been called upon to apply had he ruled upon the merits of defendants' general demurrer instead of striking it from the record.

Our decision can be meaningful only in the light of a thorough and detailed analysis of the complaint. It is denominated "Complaint for Damages (Fraud and Extortion in Transfer of Corporate Stock)." It joins as parties defendant the corporation and the several individuals alleged to have been its officers and directors during the times herein mentioned. It alleges that on various dates between August 23, 1933, and October 11, 1946, plaintiff acquired shares of stock until on the latter date she owned eighty shares. In paragraph VII, it is alleged that from October 11, 1946, until June 17, 1953, plaintiff owned the eighty shares; that during this period the corporate defendant was operating at a profit; that at various times during this period defendants importuned her to sell; that defendants, and each of them, did, on at least three occasions threaten plaintiff "that they, the defendants,

and each of them, would dissolve defendant corporation, pay off the corporate creditors and have nothing left with which to pay off the shareholders, of which this plaintiff was one, and would thereafter re-open said business and operate the same under a partnership form." Paragraphs VIII to XI read as follows:

## "VIII

"That defendants, and each of them, on or about the 17th day of June, 1953, falsely and maliciously caused and procured the said plaintiff to endorse over to the defendant corporation her aforesaid stock certificates representing her ownership in 80 shares of said corporation; that said plaintiff was induced, intimidated and threatened, then and there, and against her will, and protesting that she did not desire to surrender her stock in said corporation, was nevertheless forced and compelled by these defendants to surrender said shares of stock to the corporate defendant or one that it would designate, as aforesaid; that at said time and place defendants, and each of them, did misrepresent to this plaintiff the extent of the corporate assets and liabilities so as to give an untrue picture of the same to this plaintiff.

## "IX

"Since the time of this plaintiff's original ownership of shares of stock in defendant corporation this corporate defendant has made substantial financial gains and profits which said gains and profits have been concealed and withheld from this plaintiff and have wrongfully been paid to the officers and directors thereof; that the exact amount of said sums thus wrongfully withheld and illegally paid to officers and directors of said corporation is unknown to this plaintiff, but this plaintiff is informed and believes, and therefore alleges, that such sums are in excess of $750,000.00 of which her rightful share is in excess of $60,000.00.

## "X

"That plaintiff, for the first time, discovered the false and fraudulent representations of these defendants relative to the gains, profits and wrongful withholdings of moneys of said corporate defendant by these named defendants in a hearing before the office of the Corporation Commissioner of this state during the period of June through December 1953 and again in January, 1954.

"XI

"That the statements of the defendants, and each of them, as aforesaid, with regard to the dissolution of the defendant corporation and the extent of profits and liabilities of the corporate defendant were untrue and known by defendants, and each of them, to be untrue and were made to plaintiff with the intent to deceive, mislead, intimidate and induce plaintiff to transfer her aforesaid shares of stock and that this plaintiff was thereby defrauded, induced and coerced into transferring her shares as aforesaid; that as a result of said transfer, as aforesaid, this plaintiff has been deprived of her present, past, and future rightful share of the profits and earnings of defendant corporation; that plaintiff would not have transferred her shares, as aforesaid, but for the fraud, force and intimidation of defendants, and each of them, exercised upon this plaintiff; that as a proximate result of defendant's conduct this plaintiff has been, and is, greatly injured and put to large expense and trouble and has suffered loss in a sum in excess of $60,000.00 plus interest."

The second cause of action alleges a conspiracy among the defendant officers and directors to appropriate the funds of the corporation and to deprive plaintiff of her rights and alleges, generally, that in various ways the individual defendants wrongfully diverted the funds of the corporation by taking excessive salaries, bonuses, dividends and other unearned compensation. The third cause of action repleads the second and seeks exemplary damages.

Citing *Hobart* v. *Hobart Estate Co.*, 26 Cal.2d 412 [159 P.2d 958], and *Taylor* v. *Wright*, 69 Cal.App.2d 371 [159 P.2d 980], standing for the so-called "special facts doctrine," plaintiff urges that the complaint states a cause of action against the defendant officers and directors for fraud and coercion by which she was induced to sell her stock. Recognizing that this theory of the complaint is somewhat inconsistent with the nature of the relief sought in the prayer, plaintiff argues that "regardless of mistaken theory or imperfections of form" the complaint states a cause of action and that it was error to sustain the objection to the introduction of evidence and to deny the motion for leave to amend.

It is our holding that the trial court did not err in sustaining the objection, which served the purpose of the general demurrer. The allegations relating to coercion were all in terms which amounted to nothing more than conclusions of the pleader. We agree also with respondents' contention that

the essential elements of actionable fraud were not adequately set forth. ■ As stated in *Hannon* v. *Madden,* 214 Cal. 251, 267-268 [5 P.2d 4] : "It is a cardinal rule of pleading that fraud must be pleaded in specific language descriptive of the acts which are relied upon to constitute fraud. It is not sufficient to allege it in general terms, or in terms which amount to mere conclusions." (See also *Fallbrook Public Utility Dist.* v. *Martin,* 151 Cal.App.2d 84, 94 [311 P.2d 151].)

■ We hold, however, that the denial of plaintiff's request for leave to amend was an erroneous ruling. Such leave must be granted unless the record demonstrates to a reasonable certainty that no cause of action can be stated. (*Miller* v. *McLaglen,* 82 Cal.App.2d 219, 228 [186 P.2d 48]; *Bice* v. *Stevens,* 136 Cal.App.2d 368, 379 [289 P.2d 95]; *Reed* v. *Norman,* 152 Cal.App.2d 892, 900 [314 P.2d 204].)

The evident imperfections in plaintiff's complaint do not afford any sufficient justification for an adjudication "that no basic right of action can possibly exist." (*Bice* v. *Stevens, supra,* at page 379.) One of the most common varieties of amendments is that which is allowed after the sustaining of a general demurrer. (*Thomas* v. *Bruza,* 151 Cal.App.2d 150, 155-156 [311 P.2d 128].)

■ Respondents advance two further contentions in support of the judgment, both of which we find to be untenable. The contention that the gravamen of plaintiff's complaint is derivative in nature is refuted by our detailed analysis as set forth above. While there are some aspects of the complaint which are suggestive of a derivative cause of action, the central and dominant theme of the pleading is an alleged fraud which induced plaintiff to sell her eighty shares of stock, to her damage in the sum of $60,000. Such a cause of action obviously is individual, and not representative, in character.

■ Respondents' plea of the statute of limitations (Code Civ. Proc., §§ 338, subd. 4, 359), is not sustainable. Section 359, relating to actions against directors or stockholders of a corporation to recover a penalty or forfeiture or to enforce a liability created by law, is wholly inapplicable. Section 338, subdivision 4, is, of course, applicable, but it does not operate to bar any cause of action which plaintiff may have against defendants for fraud inducing the sale of her stock, if we assume the truth of her allegation that the sale was effected on June 17, 1953. This action was commenced on June 2, 1955, less

than two years after the sale, which would mark the accrual of any cause of action for fraud therein.

The judgment is reversed with directions to allow plaintiff to file an amended complaint, if she be so advised.

Fox, P. J., and Ashburn, J., concurred.